**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| JENNIFER WARD,<br>      PLAINTIFF, | |
| v. | Case No. 5:20-cv-606 |
| MOUNTAIN RUN SOLUTIONS, LLC,<br>SURETEC INSURANCE COMPANY,<br>CAPITAL LINK MANAGEMENT, LLC,<br>HARTFORD CASUALTY INSURANCE COMPANY,<br>SAMUEL PICCIONE, individually,<br>DENISA PICCIONE, individually,<br>JONATHAN RINKER, individually,<br>JOHN DOE COMPANY<br>      a/k/a "ROTHMAN KLEIN MEDIATION"<br>EXPERIAN INFORMATION SOLUTIONS, INC., and<br>TRANS UNION LLC<br>      DEFENDANTS | |

## COMPLAINT AND JURY DEMAND

This action arises out of violations of the Fair Credit Reporting Act, 15 U.S.C. §

1681, *et seq*. (hereinafter referred to as "FCRA") by Mountain Run Solutions, LLC (formerly

known as "Perfection Collection LLC") (hereinafter referred to as "Mountain Run"),

Experian Information Solutions, Inc. (hereinafter referred to as "Experian") and Trans Union,

LLC (hereinafter referred to as "Trans Union") as well as violations of the Fair Debt

Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (hereinafter referred to as "FDCPA"), and

the Texas Finance Code § 392.001, *et seq*.  by Mountain Run, Capital Link Management,

LLC ("CLM") Samuel Piccione, Denisa Piccione, Jonathan Rinker ("Rinker"), and John Doe

Company, an unidentified company using the name "Rothman Klein Mediation," (hereinafter

referred to as "Rothman Klein").

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d) and 15 U.S.C. § 1681p.

2. Supplemental Jurisdiction exists pursuant to 28 U.S.C. § 1367.

## VENUE

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), in that defendants transact business in this judicial district and directed actions toward residents of this district, and a substantial portion of the acts giving rise to this action occurred in this District.

4. Plaintiff resides in this District.

## PARTIES

5. Plaintiff Jennifer Ward, is an adult individual residing in Wilson County, Texas, and is a "consumer" as the term is defined by 15 U.S.C. § 1681a(c), 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1).

6. Mountain Run is a Utah business entity operating from Orem, Utah and/or western New York.

7. Mountain Run is not registered to do business in Texas, but can be served in New York or Utah in accordance with the laws of either state or in accordance with the laws of the state of Texas.

8. Mountain Run conducts business and markets itself on two websites.  On one website (www.mountainrunsolutions.com) it uses the "Mountain Run Solutions" name and on another website (www.perfectioncollection.com) it uses the "Perfection Collection" name.

2

9. The Perfection Collection website (www.perfectioncollection.com) (last visited May 12, 2020) includes the following statements among others:

   a. "At Perfection Collection we perfect our techniques of collecting to fit your needs. We understand that collections can be a painful and stressful process. It's our goal to make your experience as simple and stress free as possible; we perfect the manner at which we collect in order to obtain the highest possible returns for your organization . . . ."

   b. "We are committed to recovering your funds. We believe that every debtor has the ability to pay if motivated correctly."

10. The Mountain Run website (www.mountainrunsolutions.com) (last visited May 12, 2020) includes the following statements among others:

    a. "Mountain Run Solutions LLC specializes in purchasing non-performing receivables in all industries."

    b. "Mountain Run Solutions LLC offers payment options to all consumers. Feel free to contact us with any questions about what payment option is right for you."

11. The principal purpose of Mountain Run is the collection of debts using the mails and telephone and other means.

12. Mountain Run regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

13. As will be described below, Mountain Run (using the name Perfection Collection) attempted to collect an alleged debt from Plaintiff.

14. Mountain Run is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

15. Mountain Run is also furnisher of information to consumer reporting agencies.

16. SureTec Insurance Company ("SureTec") is a surety bond company doing business in Texas and who can be served at 9737 Great Hills Trail, Suite 320, Austin, TX 78759.

17. SureTec is liable for Mountain Run's violation(s) of the Texas Finance Code pursuant to a bond on file with the Texas Secretary of State, specifically bond number 3370070.

18. SureTec is a foreign entity that can be served in the state of Texas via its registered agent, C T Corporation System, at 1999 Bryan Street Suite 900, Dallas, Texas 75201-3136.

19. Experian is a foreign corporation registered to do business in Texas.  Experian can be served in Texas via its registered agent, C T Corporation System, at 1999 Bryan St., Suite 900, Dallas, TX  75201.

20. Experian is a consumer reporting agency as that term is defined by 15 U.S.C. § 1681A(f).

21. Trans Union, LLC is a foreign corporation registered to do business in Texas.  Trans Union can be served in Texas via its registered agent, The Prentice-Hall Corporation System, at 211 E 7th Street, Suite 620, Austin, TX 78701.

22. Trans Union is a consumer reporting agency as that term is defined by 15 U.S.C. 1681A(f).

23. Defendant Capital Link Management, LLC ("CLM") is a business entity operating from the Buffalo, New York area.

24. CLM is not registered to do business in Texas and does not have a registered agent in

Texas, but can be served at its place of business at 100 Corporate Parkway, Suite 106,

Buffalo, NY  14226 or as permitted by Texas or New York law.

25. Prior to a previous lawsuit against CLM, CLM's website (capitallinkmanagement.com)

stated:

> Capital Link Management manages accounts across the credit spectrum including
> Consumer, Commercial, Installment Loans, DDA, Telecom, Medical and more.
> …
> We are committed to treating all consumers with respect, fairness, and honesty. Our
> employee's are well trained in government standards and regulations regarding debt-
> collection practices, credit reporting, and privacy protection.
> …
> Capital Link Management strives to make the collection process as easy as possible
> for everyone. We are ready to take on new challenges and make sure that both
> consumers and clients are pleased. Financial freedom is just around the corner with
> us.

26. CLM's website was changed to remove much of that language.  But its website still states

REDEFINING ARM

INCREASE REVENUES.

DECREASE EXPENSES.

(www.capitallinkmanagement.com) (last visited May 12, 2020).

27. On another page of its website, CLM claims its "areas of expertise" are:

> Consumer
> Commercial
> Installment Loans
> DDA
> Telecom
> Medical

(www.capitallinkmanagement.com/aboutus) (last visited May 12, 2020).  On information

and belief, these categories are the types of credit accounts CLM has experience

collecting as described in the previous language used on its website detailed in paragraph nine (9) above.

28. Under the heading "Experience" CLM boasts that "With extensive knowledge and experience, Capital Link Management is here to help you get the return you are looking for." Under the heading "Portfolio Management" CLM advertises "We know managing a portfolio is not a cookie cutter process. We work with you on your goals and custom tailor a plan of action. We make keeping track of your investment as easy as possible." Under the heading "Our Commitment" CLM claims "Capital Link Management is committed to treating all consumers with respect, fairness, and honesty." Finally, under the heading "CONSUMER PROTECTION" CLM informs its website viewers of some of the protections afforded to consumers under the Fair Debt Collection Practices Act and also states the following:

> Capital Link Management and its employees are committed to following the FDCPA and all other applicable federal and state regulations.
> …
>
> In the even[t] you happen to receive a call such as described above, please contact us as soon as possible at 855.797.6909 Monday through Friday 9:00AM - 5:00PM EST.
> - Follow the instructions of the caller
> - Provide any financial, account or payment information
> - Provide any personal information

29. As will be described below, CLM attempted to collect a past due account from Plaintiff via telephone and email communications.

30. The principal purpose of CLM is the collection of debts using the mails and telephone and other means.

31. CLM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money,

property or services which are the subject of the transactions are primarily for personal, family or household purposes.

32. CLM is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

33. Hartford Casualty Insurance Company ("Hartford") is the surety company for the bond CLM has on file with the Texas Secretary of State, specifically bond number 57BSBHW9664.

34. Hartford is liable for acts committed by CLM pursuant to, and to the extent provided by, Chapter 392 of the Texas Finance Code and a bond secured pursuant thereto (bond 57BSBHW9664), as well as any other applicable law.

35. Hartford is a foreign entity that can be served in the state of Texas via its registered agent, C T Corporation System, at 1999 Bryan Street Suite 900, Dallas, Texas 75201.

36. Defendant Samuel Piccione is a natural person, residing at 4894 Mount View Dr., Lockport, New York 14094.

37. Samuel Piccione is an owner of CLM and actively manages CLM and directs the policies of the company.

38. Samuel Piccione regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Samuel Piccione uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

39. Samuel Piccione is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

40. Defendant Denisa Piccione is a natural person, residing at 4894 Mount View Dr., Lockport, New York 14094.

41. Denisa Piccione is an owner of CLM and actively manages CLM and directs the policies of the company.

42. Denisa Piccione regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Denisa Piccione uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

43. Denisa Piccione is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

44. Defendant Rinker is a natural person, residing at 6296 Melville Cir., Sanborn, New York 14132.

45. Rinker is an owner of CLM and actively manages CLM and directs the policies of the company.

46. Rinker regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Rinker uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

47. Rinker is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

48. The identity of John Doe Company is currently unknown to Plaintiff, but is known to co-defendant Mountain Run.  Discovery will quickly identify the correct identity of this party.

49. John Doe Company, at all times relevant hereto, used the unregistered fictitious business name "Rothman Klein Mediation" in its dealings with Plaintiff.

50. As will be described below, Rothman Klein communicated with Plaintiff's husband via telephone in order to get a message to Plaintiff and to collect a debt from Plaintiff that was previously owed to a third-party.

51. Rothman Klein was attempting to make a profit off of its communication with Plaintiff.

52. On information and belief, the principal purpose of Rothman Klein is the collection of debts using the mails and telephone and other means.

53. On information and belief, Rothman Klein regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

54. On information and belief, Rothman Klein is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

## FACTUAL ALLEGATIONS

55. At some time in the past, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, namely an amount due and owing

on a personal account (hereinafter the "Account").  Specifically, the Account was a debt

on a home security system at Plaintiff's residence.

56. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and is a

"consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

57. The Account allegedly went into default with the original creditor, a company using the

trademark "Vivint" in its marketing as an alarm company (hereinafter referred to as

"Vivint").

58. After the Account allegedly went into default, the Account was purchased by Mountain

Run (or its predecessor in name "Perfection Collection LLC").

59. Plaintiff did not incur this debt despite the many representations by all of the defendants

that she did so.

60. The account originated when her daughter, who was living in a home owed by Plaintiff,

allegedly purchased Vivint products or services.

61. Plaintiff did not agree to purchase any products or services from Vivint and did not

consent to be responsible for any purchases or agreements allegedly made by Plaintiff's

daughter.

62. Plaintiff was not present, and in fact was hundreds of miles away at the time Plaintiff's

daughter dealt Vivint.

63. Despite this, a copy of a contract has been provided to Plaintiff allegedly proving that

Plaintiff agreed to a contract with Vivint.

64. The contract referenced above clearly contains a signature that spells out "J. Joergensen"

above the typed name "Jennifer Ward."

65. Regardless of the actions of her daughter with regard to Vivint, the contract does not bear the signature of Plaintiff, Plaintiff did not agree to purchase any products or services from Vivint, Plaintiff did not open the Account and Plaintiff owes no money to anyone or any company on the Account.

**Inaccurate Credit Reporting**

66. After the Account allegedly defaulted and was purchased by Mountain Run, Mountain Run reported to two of the three major credit reporting agencies, Experian and Trans Union, that Plaintiff was past due and owed $4,156.00 on the Account.

67. The information reported to the credit reporting agencies was, and is, false.

68. Plaintiff mailed dispute letters to Experian and Trans Union on or about April 13, 2020, both of which were received by the respective addressee soon thereafter.

69. The dispute letter mailed to Experian and Trans Union included a copy of the fraudulent contract that bears the wrong signature and a copy of her social security card illustrating that her signature is not "J. Joergensen" as shown on the alleged contract with Vivint.

70. On information and belief, Plaintiff's dispute was communicated from one or more of the two credit reporting agencies to Mountain Run.

71. Despite being presented clear evidence of error or fraud, neither Experian nor Trans Union nor Mountain Run took any steps to correct the inaccurate information or remove the account from Plaintiff's credit file.

72. Experian failed to conduct a reasonable investigation of Plaintiff's dispute.

73. Trans Union failed to conduct a reasonable investigation of Plaintiff's dispute.

74. Mountain Run failed to conduct a reasonable investigation of Plaintiff's disputes.

75. Experian continues to include the inaccurate information detailed above from Mountain Run in Plaintiff's credit profile.

76. Trans Union continues to include the inaccurate information detailed above from Mountain Run in Plaintiff's credit profile.

77. The information reported by Mountain Run to two of the three major credit reporting agencies has negatively affected Plaintiff's credit rating, her creditworthiness and her ability to secure funds for a mortgage at the best possible interest rate.

**Unlawful Collection Practices**

78. After purchasing the Account, Mountain Run placed the Account with, or otherwise transferred the Account to, CLM for collection.

79. As described above, Plaintiff denies liability for the amount CLM and Mountain Run were attempting to collect.

80. Plaintiff requests that defendants cease all further communications regarding the Account.

81. During approximately the month of February 2020, CLM spoke with Plaintiff and Plaintiff's husband on the telephone about the Account.

82. In one such telephone call, Plaintiff was told by CLM that her and her daughter were being sued and that if the Account was not satisfied, Plaintiff's wages would be garnished.

83. In a call with Plaintiff's husband, an employee for CLM using the name "Ms. Nixon" stated that if Plaintiff did not pay the amount in full or set up a payment agreement CLM was going to sue Plaintiff, obtain a judgment and garnish Plaintiff's wages.

84. The statements made in this call were false and deceptive as there was no lawsuit against Plaintiff and CLM did not have authority to garnish Plaintiff's wages or otherwise seize any assets belonging to Plaintiff.

85. In a subsequent call with Plaintiff's husband, CLM's employee using the name "Ben Martin" told Plaintiff's husband that he was aware that Vivint used fraudulent tactics to formulate alleged contracts, but that it would be cheaper for Plaintiff to just pay a reduced amount on the Account than it would be to sue Vivint for the fraudulent activity.

86. CLM also called Plaintiff's daughters and left voicemails for Plaintiff that were intended by CLM to be communicated to Plaintiff.

87. In one such voicemail, CLM stated to one of Plaintiff's daughters:

> Hi, this message is solely intended for Jennifer and Jamie. Jamie, this is Ms. Nixon. I'm giving you a call today with Capital Link Management. I'm calling in regards to the hold that was placed here on case number 3 1 0 7 0 5 2 attached to both your names and a social security number. Today that hold has been lifted due to the nature of this matter. It is imperative that either you or your attorney gets in contact with the office immediately to issue a final statement. I'll be in the office today until about 4:00, you can reach me directly at 8 5 5 3 2 3 7 7 8 6. Please be advised that a decision will be made with or without your involvement, so I expect to hear back from either you or your representative soon. And I certainly do wish you two the best of luck.

88. CLM left another voicemail from Plaintiff with one of Plaintiff's daughters which stated:

> Jennifer Ward and Jamie Lanell, this is Ms. Nixon giving you all a call today with Capital Link Management. I'm calling regarding the hold that was taken off case number 3 1 0 7 0 5 2. Today, due to the nature of this matter, it's imperative that you or your attorney gets in contact with the office immediately before the close of business to issue a final statement. You can reach me directly up until 4 p.m. My telephone number is 8 5 5 3 2 3 7 7 8 6. Please be advised that a decision will be made with or without your involvement and I can confirm that you have been notified several times, including now, all of which have failed. This is going to be your last and official notification. Again, you can reach me directly at 8 5 5 3 2 3 7 7 8 6, you or your attorney, in regards to case number 3 1 0 7 0 5 2. If I do not hear back from you or your representative soon, I certainly do wish you two the best of luck.

89. Another voicemail for Plaintiff left with one of Plaintiff's daughters stated:

> Jennifer Ward, this is Ms. Nixon giving you a call again in regards to you and your daughter, Jamie. The case 3 1 0 7 0 5 2, the hold's been removed. I still haven't heard anything back from you guys or your attorney in relation to this matter. Please be sure that I am contacted back today. 8 5 5 3 2 3 7 7 8 6.

90. On approximately February 25, 2020, Plaintiff's husband received a voicemail from CLM that stated:

> Hi, Mr. Ward. This is Ben Martin. We have this judgment claim for the Vivint alarm. I talked to you about a week/week-and-a-half ago. No, I'm sorry, I talked to you on the 21st. If you can, please give me a call. I'm just looking to see which way you guys are looking to go on this thing here. Obviously, if we can do the settlement, we can save you a good amount of cash and get this off of Jennifer's credit report. But I would at least like to set the two hundred a month on the three grand. Please reach out to me today. I'll be in the office 'til about six o'clock Eastern. My phone number, Mr. Ward, is 8 3 3 7 7 6 1 5 7 5. Thank you, sir.

91. The statements made in these voicemails were false and deceptive as there was no "judgment" or "case" against Plaintiff and the words and phrases used such as "hold" and "case number 3107052" and "attached to both your names and a social security number" and "due to the nature of this matter" and "imperative that either you or your attorney gets in contact with the office" and "a decision will be made with or without your involvement" (or phrases not exactly as those quoted in this paragraph but substantially similar) would cause the least sophisticated consumer to believe that he or she was being sued on the account despite the fact that neither CLM nor the creditor on the account was suing Plaintiff.

92. As of the filing of this complaint, no lawsuit has been filed against Plaintiff (or her daughter) on the Account.

93. At the time CLM made the statements detailed above, neither CLM nor Mountain Run intended to sue Plaintiff on the Account.

94. Two of the voicemails above amounted to an improper disclosure to a third party of the existence of the Account when messages were left for one of Plaintiff's daughters that did not previously know of the existence of the Account.

95. Plaintiff was embarrassed to learn that her daughter was informed that she was being sued for not repaying an Account.

96. CLM's sole purpose for making the statements described above was to intimidate Plaintiff into making a payment on the Account.

97. CLM's collection practices caused Plaintiff to suffer actual damages in the form of fear, anxiety, stress, sleeplessness, mental anguish, mild depression, embarrassment and/or distraction from normal life.

98. During one or more communications with Plaintiff in the year prior to the filing of this complaint, CLM did not inform Plaintiff that the communication was a call from a debt collector and/or that the call was an attempt to collect a debt and/or that any information obtained would be used for the purpose of debt collection.

99. CLM never provided Plaintiff with notice of her rights dispute the debt as required by 15 U.S.C. § 1692g.

100. Based on the allegations contained in this Complaint as well as the allegations made in similar lawsuits against CLM it is clear that the use of false and deceptive collection practices is the norm at CLM.

101. On information and belief, Samuel Piccione (a) created the collection policies and procedures used by CLM, and its respective employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of CLM, (c) oversaw the application of the

collection policies and procedures used by CLM and its employees and agents, (d) drafted, created, approved and/or ratified the tactics and scripts used by CLM and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by CLM and its employees and agents in connection with its common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by CLM and its employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

102.    On information and belief, Denisa Piccione (a) created the collection policies and procedures used by CLM, and its respective employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of CLM, (c) oversaw the application of the collection policies and procedures used by CLM and its employees and agents, (d) drafted, created, approved and/or ratified the tactics and scripts used by CLM and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by CLM and its employees and agents in connection with its common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by CLM

16

and its employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

103.  On information and belief, Rinker (a) created the collection policies and procedures used by CLM, and its respective employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of CLM, (c) oversaw the application of the collection policies and procedures used by CLM and its employees and agents, (d) drafted, created, approved and/or ratified the tactics and scripts used by CLM and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by CLM and its employees and agents in connection with its common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by CLM and its employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

104.  Each telephone call, voicemail and written communication to, and/or with, Plaintiff constituted a "communication" as defined by 15 U.S.C. § 1692a(2).

105.  The only reason that CLM and/or representative(s), employee(s) and/or agent(s) of CLM made telephone call(s) to Plaintiff was to attempt to collect the Account.

106.  The only reason that CLM and/or representative(s), employee(s) and/or agent(s) of CLM had telephone conversation(s) with Plaintiff was to attempt to collect the Account.

107.   All of the conduct by CLM and their respective employees and/or agents alleged in the preceding paragraphs was done knowingly and willfully.

108.   As a consequence of the collection activities and communication(s) by CLM, Plaintiff seeks damages pursuant to 15 U.S.C. § 1692k(a) and Tex. Fin. Code § 392.403.

109.   Mountain Run, Samuel Piccione, Denisa Piccione and/or Rinker had actual knowledge that CLM repeatedly or continuously engaged in acts or practices prohibited by Chapter 392 of the Texas Finance Code.

110.   After the collection attempts from CLM detailed above, Mountain Run placed the Account with, or otherwise transferred the Account to, Rothman Klein for collection.

111.   On approximately April 28, 2020, Rothman Klein talked with Plaintiff's husband on the phone.  The employee for Rothman Klein introduced himself as "Ben McMillan, fraud investigation unit, law offices Rothman and Klein…"

112.   During this call between Plaintiff's husband and Rothman Klein, Rothman Klein made the following statements in quotation marks and statements conveying the messages not in quotation marks:

   a.   Made several references to his access to a "federal database" as if to imply that he was accessing a law enforcement database;

   b.   "We were asked to place allegations against Ms. Ward in Tarrant County Court concerning Vivint alarm."

   c.   "Back on July 14, 2017, you had an alarm system placed in your home."

   d.   "Outstanding balance of $4,155.62"

   e.   "The matter went to the collection stages…they deemed the matter uncollectible and you guys uncooperative.  The matter came over and we were asked to place charges against her in Tarrant County Court."

   f.   "Unless this matter is taken care of today, sir, she's gonna be served papers at her place of employment."

18

g.  "You're gonna be charged also, sir.  They added your name to this matter because the state of Texas is a marital state."

h.  "Let me explain something to you, sir.  Either you can take care of this matter on a voluntary basis or we will send the authorities, the Wilson County Sheriff's Department, over to [your residence] and a $5,200 litigation fee will be placed on top of this matter and they will do a forcible recovery of over $9,300."

i.  He offered a reduced rate "because of COVID19"

j.  "You're gonna be charged with breach of contract and theft of services. If you don't want to take care of it, what I will do is terminate the phone call and they will play this voicemail for you on your court date."

k.  "It's called integrity, Mr. Ward."

l.  "… gonna be a criminal case because you're in breach of contract and its over $2,500…."

m.  He told Plaintiff's husband that it would be up to the judge whether Plaintiff was charged with a felony or a misdemeanor.

n.  "What they will do is a forcible recovery of up to 25% of you and her check for over $9,000 and you'll have to retain an attorney."

o.  Told him that the court is trying to settle this matter and matters like it because COVID19 has created an overcrowded court system.

p.  Mr. Ward, this is what we do.  I'm gonna say this one more time.  This call is being monitored and recorded for Tarrant county court.  Wilson county authorities will serve you papers for your court date in Tarrant county. Once that happens, they're gonna do a forcible recovery for $9,300 and you're gonna have to retain an attorney.  OR, you could pay $1,664 with a $25 processing fee and we will zero out your balance.  See the way this works is this, they'll play this voicemail for you on your court date and the judge will tell you 'Mr. Ward, why didn't you take advantage of that?'  Okay?  Because the reality is this, Mr. Ward, we help people with integrity. … The judge is gonna tell you that.  He's gonna ask you… 'Why would you question this man.  What happened to your integrity?'"

q.  "We're saving you about $8,000."

113.  The statements made to Plaintiff's husband were intended to be conveyed to Plaintiff.

114.    The statements made by Rothman Klein were false and deceptive as there was no case or lawsuit filed or about to be filed with the Tarrant County Courts, the Sheriff's department was not about to serve Plaintiff with papers, no one was going to be charged with any crimes as result of the alleged breach of contract, no additional litigation fees were going to be added to the balance allegedly owed by Plaintiff and there was no judge that would be questioning Plaintiff or her husband and the offer was not saving Plaintiff $8,000.

115.    As of the filing of this complaint, no lawsuit has been filed against Plaintiff (or her daughter) on the Account.

116.    At the time Rothman Klein made the statements detailed above, neither Rothman Klein nor Mountain Run intended to sue Plaintiff on the Account.

117.    Rothman Klein's sole purpose for making the statements described above was to intimidate Plaintiff into making a payment on the Account.

118.    Rothman Klein's collection practices caused Plaintiff to suffer actual damages in the form of fear, anxiety, stress, sleeplessness, mental anguish, mild depression, embarrassment and/or distraction from normal life.

119.    On approximately May 13, 2020, Plaintiff's husband received a voicemail message from Rothman Klein that stated:

> Good afternoon. This message is intended solely for Jennifer Ward. My name is Michelle Miles. I'm calling in reference to the account 1 1 5 8 3 5 3. Mr. Ward, we had had a conversation back on the 20th of April in reference to Miss Ward. You had indicated you're going to follow up with me, unfortunately I have not had the pleasure speaking with either you or she. We will have to finalize the request on the account. I would like the opportunity to speak with either you or she before closing this as a direct refusal, I want to assume this is a mistake, oversight. If I could please have a return phone call as soon as possible. I'd appreciate either you or she's time. Again, that number is 8 8 8 9 1 5 9 8 7 8. My direct extension is 1 1 6. Thank you.

120. During one or more communications with Plaintiff in the year prior to the filing of this complaint, as specifically evidenced by the voicemail described above, Rothman Klein did not inform Plaintiff that the communication was a call from a debt collector and/or that the call was an attempt to collect a debt and/or that any information obtained would be used for the purpose of debt collection.

121. Rothman Klein never provided Plaintiff with notice of her rights dispute the debt as required by 15 U.S.C. § 1692g.

122. Each telephone call, voicemail and written communication to, and/or with, Plaintiff constituted a "communication" as defined by 15 U.S.C. § 1692a(2).

123. The only reason that Rothman Klein and/or representative(s), employee(s) and/or agent(s) of Rothman Klein made telephone call(s) to Plaintiff was to attempt to collect the Account.

124. The only reason that Rothman Klein and/or representative(s), employee(s) and/or agent(s) of Rothman Klein had telephone conversation(s) with Plaintiff was to attempt to collect the Account.

125. All of the conduct by Rothman Klein and their respective employees and/or agents alleged in the preceding paragraphs was done knowingly and willfully.

126. As a consequence of the collection activities and communication(s) by Rothman Klein, Plaintiff seeks damages pursuant to 15 U.S.C. § 1692k(a) and Tex. Fin. Code § 392.403.

127. Mountain Run had actual knowledge that Rothman Klein repeatedly or continuously engaged in acts or practices prohibited by Chapter 392 of the Texas Finance Code.

**RESPONDEAT SUPERIOR**

128.   The representative(s) and/or collector(s) at CLM were employee(s) and/or agents of CLM at all times mentioned herein.

129.   The representative(s) and/or collector(s) at CLM were acting within the course of their employment at all times mentioned herein.

130.   The representative(s) and/or collector(s) at CLM were under the direct supervision and control of CLM, Samuel Piccione, Denisa Piccione and/or Rinker at all times mentioned herein.

131.   The actions of the representative(s) and/or collector(s) at CLM are imputed to their employer(s), CLM, Samuel Piccione, Denisa Piccione and/or Rinker.

132.   CLM acted at all times as an agent of Mountain Run, Samuel Piccione, Denisa Piccione and/or Rinker.

133.   The actions of CLM, Samuel Piccione, Denisa Piccione and/or Rinker are imputed to Mountain Run.

134.   Mountain Run was aware of the collection methods and practices used by CLM, Samuel Piccione, Denisa Piccione and/or Rinker and intended to profit from those collection methods.

135.   The representative(s) and/or collector(s) at Rothman Klein were employee(s) and/or agents of Rothman Klein at all times mentioned herein.

136.   The representative(s) and/or collector(s) at Rothman Klein were acting within the course of their employment at all times mentioned herein.

137.   The representative(s) and/or collector(s) at Rothman Klein were under the direct supervision and control of Rothman Klein at all times mentioned herein.

138. The actions of the representative(s) and/or collector(s) at Rothman Klein are imputed to their employer(s), Rothman Klein.

139. Rothman Klein acted at all times as an agent of Mountain Run.

140. The actions of Rothman Klein are imputed to Mountain Run.

141. Mountain Run was aware of the collection methods and practices used by Rothman Klein and intended to profit from those collection methods.

### COUNT I: VIOLATIONS OF THE FCRA, 15 U.S.C § 1681, et seq.
### BY MOUNTAIN RUN SOLUTIONS, LLC

142. All prior paragraphs are adopted herein as if set forth word for word.

143. Mountain Run violated 15 U.S.C. § 1681s-2(a)(1)(A) by reporting to the consumer reporting agency information that it knew or had reasonable cause to believe was inaccurate.

144. Mountain Run violated 15 U.S.C. § 1681s-2(a)(8)(E) and 1681s-2(b)(1) by failing to conduct a reasonable investigation with respect to the information Plaintiff disputed.

145. As a consequence of Mountain Run's actions, Plaintiff seeks damages pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT II: VIOLATIONS OF THE FCRA, 15 U.S.C § 1681, et seq.
### BY EXPERIAN INFORMATION SOLUTIONS, INC.

146. All prior paragraphs are adopted herein as if set forth word for word.

147. Experian violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable investigation with respect to the information Plaintiff disputed.

148. Experian violated 15 U.S.C. § 1681i(a)(5) by allowing inaccurate information to be included in Plaintiff's file after it was informed of the inaccuracy of the information.

23

149. As a consequence of Experian's actions and omissions, Plaintiff seeks damages pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT III: VIOLATIONS OF THE FCRA, 15 U.S.C § 1681, et seq. BY TRANS UNION, LLC

150. All prior paragraphs are adopted herein as if set forth word for word.

151. Trans Union violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable investigation with respect to the information Plaintiff disputed.

152. Trans Union violated 15 U.S.C. § 1681i(a)(5) by allowing inaccurate information to be included in Plaintiff's file after it was informed of the inaccuracy of the information.

153. As a consequence of Trans Union's actions and omissions, Plaintiff seeks damages pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT IV:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY CAPITAL LINK MANAGEMENT, LLC

154. The previous paragraphs are incorporated into this Count as if set forth in full.

155. The act(s) and omission(s) of CLM and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. § 1692c(b) and 15 U.S.C. § 1692d(2) and 15 U.S.C. § 1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11) and 15 U.S.C. § 1692f(6) and 15 U.S.C. § 1692g(a).

156. Pursuant to 15 U.S.C. § 1692k Plaintiff seeks damages, reasonable attorney's fees and costs from CLM.

### COUNT V:  VIOLATIONS OF THE TEXAS FINANCE CODE BY CAPITAL LINK MANAGEMENT, LLC

157. The previous paragraphs are incorporated into this Count as if set forth in full.

158. The act(s) and omission(s) of CLM and its representative(s), employee(s) and/or agent(s) violated Tex. Fin. Code § 392.301(a)(7)&(8) and Tex. Fin. Code § 392.302(1) and Tex. Fin. Code § 392.304(a)(5)(A)&5(B)&(8)&(14)&(16)&(17)& (19).

159. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from CLM.

160. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks an injunction against CLM enjoining it from future violations of the Texas Finance Code as described herein.

## COUNT VI: IMPUTED LIABILITY OF HARTFORD CASUALTY INSURANCE COMPANY FOR LIABILITY OF CAPITAL LINK MANAGEMENT, LLC

161. The previous paragraphs are incorporated into this Count as if set forth in full.

162. CLM's liability under Tex. Fin. Code § 392.001, *et seq*. is imputed to Hartford pursuant to Tex. Fin. Code § 392.102.

163. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Hartford.

## COUNT VII: INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY CAPITAL LINK MANAGEMENT, LLC

164. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, CLM is liable to Plaintiff for invading Plaintiff's privacy (intrusion on seclusion). CLM intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

165.    Plaintiff suffered actual damages from CLM as a result of the intrusion on Plaintiff's privacy.

### COUNT VIII:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY SAMUEL PICCIONE

166.    The previous paragraphs are incorporated into this Count as if set forth in full.

167.    By influencing and/or controlling the conduct of CLM, Samuel Piccione is liable for the act(s) and omission(s) of CLM and its representative(s), employee(s) and/or agent(s) for violations of 15 U.S.C. § 1692c(b) and 15 U.S.C. § 1692d(2) and 15 U.S.C. § 1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11) and 15 U.S.C. § 1692f(6) and 15 U.S.C. § 1692g(a).

168.    Pursuant to 15 U.S.C. § 1692k Plaintiff seeks damages, reasonable attorney's fees and costs from Samuel Piccione.

### COUNT IX:  VIOLATIONS OF THE TEXAS FINANCE CODE BY SAMUEL PICCIONE

169.    The previous paragraphs are incorporated into this Count as if set forth in full.

170.    By influencing and/or controlling the conduct of CLM, Samuel Piccione is liable for the act(s) and omission(s) of CLM and its representative(s), employee(s) and/or agent(s) for violations of Tex. Fin. Code § 392.301(a)(7)&(8) and Tex. Fin. Code § 392.302(1) and Tex. Fin. Code § 392.304(a)(5)(A)&5(B)&(8)&(14)&(16)&(17)& (19).

171.    Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Samuel Piccione.

172.   Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks an injunction against Samuel Piccione enjoining him from future violations of the Texas Finance Code as described herein.

### COUNT X:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY SAMUEL PICCIONE

173.   In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, Samuel Piccione is liable to Plaintiff for colluding with CLM and its employees and officers and owners to invade Plaintiff's privacy (intrusion on seclusion).  Samuel Piccione intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

174.   Plaintiff suffered actual damages from Samuel Piccione as a result of the intrusion on Plaintiff's privacy.

### COUNT XI:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY DENISA PICCIONE

175.   The previous paragraphs are incorporated into this Count as if set forth in full.

176.   By influencing and/or controlling the conduct of CLM, Denisa Piccione is liable for the act(s) and omission(s) of CLM and its representative(s), employee(s) and/or agent(s) for violations of 15 U.S.C. § 1692c(b) and 15 U.S.C. § 1692d(2) and 15 U.S.C. § 1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11) and 15 U.S.C. § 1692f(6) and 15 U.S.C. § 1692g(a).

177.   Pursuant to 15 U.S.C. § 1692k Plaintiff seeks damages, reasonable attorney's fees and costs from Denisa Piccione.

178.   Pursuant to 15 U.S.C. § 1692k Plaintiff seeks damages, reasonable attorney's fees and costs from Denisa Piccione.

## COUNT XII:  VIOLATIONS OF THE TEXAS FINANCE CODE
## BY DENISA PICCIONE

179.   The previous paragraphs are incorporated into this Count as if set forth in full.

180.   By influencing and/or controlling the conduct of CLM, Denisa Piccione is liable for the act(s) and omission(s) of CLM and its representative(s), employee(s) and/or agent(s) for violations of Tex. Fin. Code § 392.301(a)(7)&(8) and Tex. Fin. Code § 392.302(1) and Tex. Fin. Code § 392.304(a)(5)(A)&5(B)&(8)&(14)&(16)&(17)& (19).

181.   Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Denisa Piccione.

182.   Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks an injunction against Denisa Piccione enjoining him from future violations of the Texas Finance Code as described herein.

## COUNT XIII:  INVASION OF PRIVACY (INTRUSION ON SECLUSION)
## BY DENISA PICCIONE

183.   In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, Denisa Piccione is liable to Plaintiff for colluding with CLM and its employees and officers and owners to invade Plaintiff's privacy

(intrusion on seclusion).  Denisa Piccione intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

184.    Plaintiff suffered actual damages from Denisa Piccione as a result of the intrusion on Plaintiff's privacy.

## COUNT XIV:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq.
## BY JONATHAN RINKER

185.    The previous paragraphs are incorporated into this Count as if set forth in full.

186.    By influencing and/or controlling the conduct of CLM, Rinker is liable for the act(s) and omission(s) of CLM and its representative(s), employee(s) and/or agent(s) for violations of 15 U.S.C. § 1692c(b) and 15 U.S.C. § 1692d(2) and 15 U.S.C. § 1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11) and 15 U.S.C. § 1692f(6) and 15 U.S.C. § 1692g(a).

187.    Pursuant to 15 U.S.C. § 1692k Plaintiff seeks damages, reasonable attorney's fees and costs from Rinker.

## COUNT XV:  VIOLATIONS OF THE TEXAS FINANCE CODE
## BY JONATHAN RINKER

188.    The previous paragraphs are incorporated into this Count as if set forth in full.

189.    By influencing and/or controlling the conduct of CLM, Rinker is liable for the act(s) and omission(s) of CLM and its representative(s), employee(s) and/or agent(s) for violations of Tex. Fin. Code § 392.301(a)(7)&(8) and Tex. Fin. Code § 392.302(1) and Tex. Fin. Code § 392.304(a)(5)(A)&5(B)&(8)&(14)&(16)&(17)& (19).

190.    Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Rinker.

191.    Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks an injunction against Rinker

enjoining him from future violations of the Texas Finance Code as described herein.

### COUNT XVI:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY JONATHAN RINKER

192.    In the alternative, without waiving any of the other causes of action herein, without

waiving any procedural, contractual, statutory, or common-law right, and

incorporating all other allegations herein to the extent they are not inconsistent with

the cause of action pled here, Rinker is liable to Plaintiff for colluding with CLM and

its employees and officers and owners to invade Plaintiff's privacy (intrusion on

seclusion).  Rinker intentionally caused the intrusion upon Plaintiff's solitude,

seclusion, or private affairs, and such intrusion would be highly offensive to a

reasonable person.

193.    Plaintiff suffered actual damages from Rinker as a result of the intrusion on Plaintiff's

privacy.

### COUNT XVII:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY JOHN DOE COMPANY A/K/A ROTHMAN KLEIN

194.    The previous paragraphs are incorporated into this Count as if set forth in full.

195.    The act(s) and omission(s) of Rothman Klein and its representative(s), employee(s)

and/or agent(s) violated 15 U.S.C. § 1692d(2)&(6) and 15 U.S.C. §

1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11)&(14) and 15 U.S.C. § 1692f(1)&(6)

and 15 U.S.C. § 1692g(a).

196.    Pursuant to 15 U.S.C. § 1692k Plaintiff seeks damages, reasonable attorney's fees and

costs from CLM.

**COUNT XVIII:  VIOLATIONS OF THE TEXAS FINANCE CODE
BY JOHN DOE COMPANY A/K/A ROTHMAN KLEIN**

197.   The previous paragraphs are incorporated into this Count as if set forth in full.

198.   The act(s) and omission(s) of Rothman Klein and its representative(s), employee(s)
and/or agent(s) violated Tex. Fin. Code § 392.101 and § 392.301(a)(2)&(7)&(8) and
Tex. Fin. Code § 392.302(1)&(2) and Tex. Fin. Code § 392.303(a)(2) and Tex. Fin.
Code § 392.304(a)(1)&(5)(A)&5(B)&(8)&(12)&(13)&(14)&(16)&(17)&(19).

199.   Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's
fees and costs from Rothman Klein.

200.   Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks an injunction against Rothman
Klein enjoining it from future violations of the Texas Finance Code as described
herein.

**COUNT XIX:  INVASION OF PRIVACY (INTRUSION ON SECLUSION)
BY JOHN DOE COMPANY A/K/A ROTHMAN KLEIN**

201.   In the alternative, without waiving any of the other causes of action herein, without
waiving any procedural, contractual, statutory, or common-law right, and
incorporating all other allegations herein to the extent they are not inconsistent with
the cause of action pled here, Rothman Klein is liable to Plaintiff for invading
Plaintiff's privacy (intrusion on seclusion).  Rothman Klein intentionally caused the
intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion
would be highly offensive to a reasonable person.

202.   Plaintiff suffered actual damages from Rothman Klein as a result of the intrusion on
Plaintiff's privacy.

**COUNT XX:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq.
BY MOUNTAIN RUN SOLUTIONS, LLC**

203. The previous paragraphs are incorporated into this Count as if set forth in full.

204. Mountain Run is liable for the act(s) and omission(s) of CLM, Samuel Piccione, Denisa Piccione and Jonathan Rinker and their representative(s), employee(s) and/or agent(s) for their violations of 15 U.S.C. § 1692c(b) and 15 U.S.C. § 1692d(2) and 15 U.S.C. § 1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11) and 15 U.S.C. § 1692f(6) and 15 U.S.C. § 1692g(a).

205. Mountain Run is liable for the act(s) and omission(s) of Rothman Klein and its representative(s), employee(s) and/or agent(s) for their violations of 15 U.S.C. § 1692d(2)&(6) and 15 U.S.C. § 1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11)&(14) and 15 U.S.C. § 1692f(1)&(6) and 15 U.S.C. § 1692g(a).

206. Pursuant to 15 U.S.C. § 1692k Plaintiff seeks damages, reasonable attorney's fees and costs from Mountain Run.

## COUNT XXI:  VIOLATIONS OF THE TEXAS FINANCE CODE BY MOUNTAIN RUN SOLUTIONS, LLC

207. The previous paragraphs are incorporated into this Count as if set forth in full.

208. Mountain Run is liable for the act(s) and omission(s) of CLM, Samuel Piccione, Denisa Piccione and Jonathan Rinker and their representative(s), employee(s) and/or agent(s) for their violations of Tex. Fin. Code § 392.301(a)(7)&(8) and Tex. Fin. Code § 392.302(1) and Tex. Fin. Code § 392.304(a)(5)(A)&5(B)&(8)&(14)&(16)& (17)&(19).

209. By having actual knowledge that CLM repeatedly or continuously engaged in acts in violation of the Texas Finace Code, and by continuing to use CLM to collect debts in Texas, Mountain Run violated Tex. Fin. Code § 392.306.

210.    Mountain Run is liable for the act(s) and omission(s) of Rothman Klein and their
        representative(s), employee(s) and/or agent(s) for their violations of Tex. Fin. Code §
        392.101 and § 392.301(a)(2)&(7)&(8) and Tex. Fin. Code § 392.302(1)&(2) and Tex.
        Fin. Code § 392.303(a)(2) and Tex. Fin. Code § 392.304(a)(1)&(5)(A)&5(B)&(8)&
        (12)&(13)&(14)&(16)&(17)&(19).

211.    By having actual knowledge that Rothman Klein repeatedly or continuously engaged
        in acts in violation of the Texas Finance Code, and by continuing to use Rothman
        Klein to collect debts in Texas, Mountain Run violated Tex. Fin. Code § 392.306.

212.    Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's
        fees and costs from Mountain Run.

213.    Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks an injunction against Mountain
        Run enjoining it from future violations of the Texas Finance Code as described
        herein.

### COUNT XXII:  IMPUTED LIABILITY OF SURETEC INSURANCE COMPANY FOR LIABILITY OF MOUNTAIN RUN SOLUTIONS, LLC

214.    The previous paragraphs are incorporated into this Count as if set forth in full.

215.    Mountain Run's liability under Tex. Fin. Code § 392.001, *et seq.*  is imputed to
        Suretec pursuant to Tex. Fin. Code § 392.102.

216.    Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's
        fees and costs from Suretec.

### EXEMPLARY DAMAGES

217.    Exemplary damages should be awarded against CLM, Samuel Piccione, Denisa
        Piccione, Jonathan Rinker and/or Rothman Klein because the harm with respect to
        which Plaintiff seek recovery of exemplary damages resulted from malice (which

means that there was a specific intent by CLM, Samuel Piccione, Denisa Piccione, Jonathan Rinker and/or Rothman Klein to cause substantial injury or harm to Plaintiff) and/or gross negligence (which means that the actions and/or omissions of CLM, Samuel Piccione, Denisa Piccione, Jonathan Rinker and/or Rothman Klein (i) when viewed objectively from the standpoint of CLM, Samuel Piccione, Denisa Piccione, Jonathan Rinker and/or Rothman Klein at the time of the acts and/or omissions, those acts and/or omissions involved an extreme degree of risk, considering the probability and magnitude of potential harm to others and (ii) were such that CLM, Samuel Piccione, Denisa Piccione, Jonathan Rinker and/or Rothman Klein had an actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others).

## JURY TRIAL DEMAND

218.   Plaintiff is entitled to and hereby demands a trial by jury.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant the following:

219.   Judgment in favor of Plaintiff and against Mountain Run Solutions, LLC as follows:

   a.   The greater of actual damages or $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A) or the amount of actual damages pursuant to 15 U.S.C. § 1681o;

   b.   Punitive damages pursuant to 15 U.S.C. § 1681n(2);

   c.   Reasonable attorneys fees and costs pursuant to 15 U.S.C. §1681n(3);

   d.   Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

   e.   Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

f.   Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

g.   Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

h.   An injunction permanently enjoining Mountain Run Solutions, LLC from future violations of the Texas Finance Code as described herein;

i.   Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996);

j.   Such other and further relief as the Court deems just and proper.

220.   Judgment in favor of Plaintiff and against Suretec Insurance Company as follows:

a.   Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403 as awarded against Mountain Run up to $10,000;

b.   Such other and further relief as the Court deems just and proper.

221.   Judgment in favor of Plaintiff and against Experian Information Solutions, Inc. as follows:

a.   The greater of actual damages or $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A) or the amount of actual damages pursuant to 15 U.S.C. § 1681o;

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(2);

c.   Reasonable attorneys fees and costs pursuant to 15 U.S.C. §1681n(3); and

d.   Such other and further relief as the Court deems just and proper.

222.   Judgment in favor of Plaintiff and against Trans Union, LLC as follows:

a.   The greater of actual damages or $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A) or the amount of actual damages pursuant to 15 U.S.C. § 1681o;

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(2);

c.   Reasonable attorneys fees and costs pursuant to 15 U.S.C. §1681n(3); and

d.   Such other and further relief as the Court deems just and proper.

223.   Judgment in favor of Plaintiff and against Capital Link Management, LLC as follows:

a.   Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

b.   Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

c.   Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

d.   Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

e.   An injunction permanently enjoining Capital Link Management, LLC from future violations of the Texas Finance Code as described herein;

f.   Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996);

g.   Such other and further relief as the Court deems just and proper.

224.   Judgment in favor of Plaintiff and against Hartford Casualty Insurance Company as follows:

a.   Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403 as awarded against CLM up to $10,000;

b.   Such other and further relief as the Court deems just and proper.

225.   Judgment in favor of Plaintiff and against Samuel Piccione, LLC as follows:

a.   Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

b.   Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

    c.   Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d.   Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

    e.   An injunction permanently enjoining Samuel Piccione from future violations of the Texas Finance Code as described herein;

    f.   Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996);

    g.   Such other and further relief as the Court deems just and proper.

226.   Judgment in favor of Plaintiff and against Denisa Piccione as follows:

    a.   Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

    b.   Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

    c.   Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d.   Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

    e.   An injunction permanently enjoining Denisa Piccion from future violations of the Texas Finance Code as described herein;

    f.   Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996);

    g.   Such other and further relief as the Court deems just and proper.

227.   Judgment in favor of Plaintiff and against Jonathan Rinker as follows:

    a.   Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

b.   Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §
     1692k(a)(2);

c.   Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

d.   Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code §
     392.403;

e.   An injunction permanently enjoining Rinker from future violations of the Texas
     Finance Code as described herein;

f.   Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield
     Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996);

g.   Such other and further relief as the Court deems just and proper.

228.   Judgment in favor of Plaintiff and against John Doe Company a/k/a Rothman Klein
       as follows:

a.   Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

b.   Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §
     1692k(a)(2);

c.   Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

d.   Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code §
     392.403;

e.   An injunction permanently enjoining Rothman Klein from future violations of the
     Texas Finance Code as described herein;

f.   Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield
     Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996);

g.   Such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE WOOD FIRM, PLLC

/s/ Jeffrey D. Wood
Jeffrey D. Wood, Esq.
ArkBN: 2006164
The Wood Firm, PLLC
11610 Pleasant Ridge Rd.
Suite 103 – Box 208
Little Rock, AR  72223
TEL:  682-651-7599
FAX:  888-598-9022
EMAIL:  jeff@jeffwoodlaw.com
Attorney for Plaintiff